IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CV-276-FL

| | | |
|---|---|---|
| LUTHER A. SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Luther A. Scott ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 27, 29). Each party filed a memorandum in support of their respective motions (D.E. 28, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 31 May 2013). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

I.  **BACKGROUND**

   A.  **Case History**

Plaintiff filed applications for DIB and SSI on 12 November 2009, and alleges an amended disability onset date of 22 September 2009.[2] Transcript of Proceedings ("Tr.") 11. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 11. On 20 April 2011, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 18-54. The ALJ issued a decision denying plaintiff's claim on 16 August 2011. Tr. 8-17. Plaintiff timely requested review by the Appeals Council. Tr. 6-7. On 23 July 2012, the Appeals Council denied the request for review. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 21 September 2012, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 7), Compl. (D.E. 8)).

   B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

---

[2] Plaintiff originally alleged a disability onset date of 28 March 2003 (Tr. 163), and the Administrative Law Judge ("ALJ") referenced this date in his decision. However, at the hearing plaintiff amended the onset date to 22 September 2009. Tr. 23. Accordingly, the court will treat 22 September 2009 as the alleged onset date for the purposes of this appeal.

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.  **Findings of the ALJ**

Plaintiff was 49 years old on the amended alleged onset date of disability and 51 years old on the date of the administrative hearing. Tr. 16 ¶ 7. The ALJ found that he has a limited education. Tr. 16 ¶ 8; *see also* Tr. 25 (plaintiff's testimony that he completed ninth grade); 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education). The ALJ further found that plaintiff had no past relevant work experience. Tr. 15 ¶ 6; 25-26.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his amended alleged onset of disability.[3] Tr. 13 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: cervical and lumbar degenerative disc disease. Tr. 13 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 13 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work[4] with certain limitations. Tr. 17 ¶ 5. The specific limitations imposed by the ALJ are as follows:

---

[3] Although the ALJ made this finding with respect to the disability period beginning on plaintiff's originally alleged onset date of 28 March 2003 (*see* n.2 *supra*), the finding would, of course, apply to the disability period beginning on the amended onset date of 22 September 2009.

[4] Light work involves lifting up to 20 pounds occasionally and lifting and carrying 10 pounds frequently. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 13 Dec.

4

> [Plaintiff] is able to stand and walk for up to four hours in an eight-hour workday. [Plaintiff] is able to sit for up to 6 hours in an eight-hour workday. He should not climb ladders, ropes or scaffolds. [Plaintiff] is limited to occasional crouching and crawling. He is limited to occasional overhead reaching. Lastly, [plaintiff] is limited to simple, routine and repetitive tasks ["SRRT's"].

Tr. 13-14 ¶ 5.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 15 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of textile inspector and small products assembler. Tr. 16-17 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 17 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

---

2013). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

**B.** **Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ erred by: (1) failing to consider any manipulative restrictions in formulating his RFC; (2) failing to properly assess his credibility; and (3) failing to consider the side effects of his medications. Each ground will be addressed in turn.

**C.** **ALJ's Alleged Failure to Consider Manipulative Restrictions in Determining Plaintiff's RFC**

Plaintiff first asserts that the ALJ failed to consider manipulative limitations in determining plaintiff's RFC. He contends that his alleged intermittent loss of grip in his right hand required a limitation to only occasional gross manipulation with that hand. The court disagrees.

In assessing a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.*, 1996 WL 374184, at *1. However, the ALJ is not required to set out the function-by-function analysis in his decision. On this point, this court recently noted:

> Although the Fourth Circuit does not appear to have addressed this question, courts within our circuit have held that "SSR 96-8p does not require an ALJ to produce a detailed statement in writing—a true 'function-by-function' analysis," and that "a narrative discussion of a claimant's symptoms and medical source opinions is sufficient" *Mills v. Astrue*, 2:11-CV-65, 2012 WL 2030093, at *16 (N.D. W. Va. Apr. 9, 2012) (citing *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009)). *See also Anderson v. Astrue*, 3:10-CV-583, 2011 WL 3585390, at *5 (E.D. Va. July 28, 2011) ("SSR 96-8p requires that an ALJ's RFC determination must address the exertional limitations, but written articulation of such limitations is not required . . . .").

*Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *3 (E.D.N.C. 1 July 2013); *see also Floyd v. Astrue*, Civ. No. 3:10CV474-FDW-DSC, 2011 WL 4946311, at *2-3 (W.D.N.C. 6 June 2011) (mag. judge's rep. & recommendation) (finding that the ALJ complied with function-by-function analysis requirement of Soc. Sec. R. 96-8p although he did not discuss every function associated with work-related activities) (citing precedent from the 7th, 8th, and 9th Circuits), *adopted*, 2011 WL 4946270 (18 Oct. 2011).

Despite plaintiff's assertion, the record indicates that he did consider plaintiff's allegation of grip loss. At the hearing, the ALJ heard plaintiff testify in detail about the problems with his grip. Tr. 31-32. In addition, the ALJ's discussion of the medical records shows that he considered plaintiff's alleged grip problem, although he did not mention it explicitly. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (internal citations omitted)); *Kozel v. Astrue*, Civil No. JKS-10-2180, 2012 WL 2951554, at *3 (D. Md. 18 July 2012) ("As long as the

reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied; 'administrative verbosity or pedantry' is not needed." (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999)).

The records involved include those of plaintiff's orthopedist, James E. Rice, M.D., who treated plaintiff for back and neck pain between April 2006 and 23 February 2011.[5] Tr. 328. The ALJ discussed those records generally in his decision. Tr. 15 ¶ 5. The records show that on 20 March 2009, plaintiff first reported problems with loss of grip to Dr. Rice, who noted: "[plaintiff] states he has been noticing he frequently drops things when holding them especially with the right hand. He is right hand dominent [sic]. The pain in his neck also goes into his hands and arms." Tr. 328. However, plaintiff's neurological examination on that day was normal, with Dr. Rice observing, specifically, that there was no decrease in fine motor speed and no "fine, rapid tremor." Tr. 327. Dr. Rice further concluded that he "[did] not appreciate any neurologic deficits on examination." Tr. 328. However, because of recent MRI findings in plaintiff's neck, Dr. Rice referred plaintiff to a neurosurgeon for further evaluation. Tr. 328.

The neurosurgeon to whom Dr. Rice referred plaintiff was Larry V. Carson, M.D., who saw plaintiff a single time, on 20 May 2009. *See* Tr. 391. The ALJ discussed the records of this single visit in his decision. *See* Tr. 15 ¶ 5. Dr. Carson noted plaintiff's complaint that "he has experienced some incoordination and seems to be dropping things, left hand is more effected [sic] than his right[6]," and that "sometimes his hands go to sleep at night and then awaken him at night occasionally." Tr. 391. However, during the physical examination, Dr. Carson found that

---

[5] While the treatment records of Dr. Rice included in the record begin on 10 January 2007, an ALJ decision on plaintiff's prior disability claim included in the record indicates that plaintiff was first treated by Dr. Rice in April 2006. Tr. 72.

[6] Based on plaintiff's report to Dr. Rice (Tr. 328) and his testimony at the hearing (Tr. 31-32), the hand affected was his right hand. Thus, while not clear, it appears that Dr. Carson's statement that the left hand was affected is in error.

plaintiff "moves all extremities well," and graded motor function in his deltoid, biceps, triceps, wrist flexion, extension, and grip as "5/5 bilaterally." Tr. 392. With respect to plaintiff's neck, Dr. Carson found only mild degenerative disc disease in his cervical vertebra and mild degenerative joint disease. Tr. 392. Based on his examination, Dr. Carson concluded that no surgery was indicated and recommended treatment by physical therapy, heat, massage, ultrasound, electrical stimulation, and isometric exercises. Tr. 392. These records of Dr. Carson, along with those of Dr. Rice regarding plaintiff's 20 March 2009 visit, are the only medical records addressing plaintiff's alleged grip problem.

The ALJ also stated in his decision that he gave significant weight to the physical RFC assessments of the Disability Determination Services ("DDS")[7] non-examining consulting physicians A. K. Goel, M.D. and Stephen Levin, M.D., dated 27 February 2010 and 26 May 2010, respectively (Tr. 291-308, 358-379). They each found that plaintiff had no limitations in either fine or gross manipulation. Tr. 296, 305, 365, 376.

Following his evaluation by Dr. Carson in May 2009, there is no indication that plaintiff pursued any of the recommended treatments or, more importantly, that he ever again complained of the alleged grip problem until his testimony at the hearing. In fact, approximately six months after seeing Dr. Carson, plaintiff and his wife completed Function Reports in support of his application for disability benefits in which they both failed to indicate when prompted that "Using Hands" was an ability affected by his impairments. Tr. 229, 237. In any event, the ALJ did include a limitation in his RFC determination that arguably addresses some degree of loss of grip: no climbing of ladders, ropes, or scaffolds. Tr. 14 ¶ 5.

---

[7] DDS is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 13 Dec. 2013).

9

For the foregoing reasons, the court concludes that the ALJ did consider plaintiff's alleged limitation in manipulation with his right hand, and that the ALJ's determination regarding this alleged limitation is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to this aspect of the ALJ's decision

### D. ALJ's Alleged Failure to Properly Assess Plaintiff's Credibility

Plaintiff next asserts that certain reasons cited by the ALJ for finding plaintiff's testimony not credible are not supported by the record. The ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

In assessing plaintiff's allegations, the ALJ made the finding at the first step of the credibility assessment that plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms." Tr. 14 ¶ 5. At the second step of the assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 14 ¶ 5. He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 14 ¶ 5. The ALJ also provided specific reasons for his credibility determination grounded in the evidence of record, including plaintiff's activities of daily living and the medical evidence. Tr. 15, ¶ 5. Plaintiff asserts that three of the reasons cited by the ALJ are not supported by the evidence. The court disagrees.

Plaintiff first challenges the ALJ's finding that, despite plaintiff's testimony about his severe back pain preventing him from working, "the record demonstrates that his condition has essentially been controlled with medication." Tr. 15 ¶ 5. Plaintiff contends that his back pain was not controlled by medication. He points to his reports to Dr. Rice of pain levels increasing from 4 to 7 between 2009 and 2011. Tr., *e.g.*, 339, 348, 395, 398, 410, 413, 419, 422, 428.

However, the level of plaintiff's pain, standing alone, does not indicate the effectiveness of his medications in treating the pain, and plaintiff fails to address whether these reported pain levels were experienced with or without medication. Between 23 December 2008 and 23 February 2011, plaintiff saw Dr. Rice monthly[8] (a total of 27 visits) for back pain and, on three of those occasions, for neck pain. There is nothing in these records indicating that plaintiff ever reported any problems with the effectiveness of his medications or complained about any side effects to Dr. Rice. Rather, Dr. Rice noted for each of these visits that plaintiff's "[c]urrent medication seems to be helping" and continued him on those medications. *See generally* Tr.

---

[8] The only exception to this schedule was the two-month period between the visits of 10 December 2009 and 9 February 2010. *See* Tr. 311, 353.

309-57, 394-429. Thus, substantial evidence of record supports the ALJ's finding that plaintiff's pain was controlled by medication.

Plaintiff also challenges the ALJ's finding that plaintiff's complaints of radiating lower back pain to Dr. Rice in February 2010 are undermined by a normal gait and negative straight leg raise ("SLR") test found during the examination on that date. Tr. 15, ¶ 5. Plaintiff asserts that the ALJ ignored the "*multiple* notations in the record of positive SLR's and abnormal gait patterns due to antalgia or stooping." (Pl.'s Mem. 10) (emphasis added).

However, among the 27 visits to Dr. Rice, he found plaintiff to have a positive SLR test during only 3 examinations: once in 2007 (Tr. 382), once in 2009 (Tr. 324), and once in 2011 (Tr. 428). Further, plaintiff was found to have an abnormal gait on only 4 occasions: twice in 2009 (Tr. 330, 348), once in 2010 (Tr. 410), and once in 2011 (Tr. 428). These intermittent abnormal findings do not render improper the ALJ's finding. To the contrary, the substantially larger number of normal findings constitute substantial evidence supporting the ALJ's finding.

Finally, plaintiff takes issue with the ALJ's finding that plaintiff "has not been compliant with all treatment measures. By his own report, [plaintiff] elected not to receive back injections as treatment for his condition." Tr. 15 ¶ 5. This finding is supported by substantial evidence. As noted above, there is no indication in the record that plaintiff pursued the treatments recommended by Dr. Carson (*i.e.*, physical therapy, heat, massage, ultrasound, electrical stimulation, and isometric exercises), and plaintiff testified that he used only medication to treat his impairments. Tr. 38. In addition, plaintiff testified that surgery for his back had been suggested to him, but then did not pursue it, advancing without elaboration[9] three different

---

[9] For example, regarding his testimony that he did not have the money for surgery, he did not indicate whether he had sought or been denied coverage for the recommended surgery under his Medicaid coverage. Tr. 38.

reasons: he did not have the money for it, he did not have the time for it, and he did not believe it would be effective. Tr. 38-39.

As to the ALJ's finding that plaintiff did not seek spinal injections, the supporting evidence includes plaintiff's statements to Dr. Rice that he did not seek the spinal injections previously recommended by another doctor because of his fear of needles. Tr. 325. At the hearing, plaintiff confirmed his rejection of spinal injections, although for different reasons: because he had heard from others that they wore out the cartilage[10] and provided relief for only about one to two weeks. Tr. 39-40. The lack of consistent explanations by plaintiff as to why he did not seek spinal injections or the additional treatments prescribed by his providers supports the ALJ's credibility finding.

For the foregoing reasons, the court concludes that the ALJ's determination regarding plaintiff's credibility is in all respects supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to the credibility determination.

### E. ALJ's Alleged Failure to Consider the Side Effects of Plaintiff's Medication

Finally, plaintiff argues that the ALJ failed to properly consider or discuss in his decision the side effects of plaintiff's medications. Specifically, plaintiff asserts that the record indicates that his medications cause drowsiness.

Plaintiff is correct that in determining the intensity and persistence of a claimant's symptoms and the extent to which those symptoms affect the claimant's capacity for work the Regulations require an ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or has taken to alleviate pain or other symptoms." 20 C.F.R. §§

---

[10] While the transcript of the hearing includes the word "cartridge" (Tr. 39), from the context of the other testimony it appears that the word spoken by plaintiff was "cartilage."

13

404.1529(c)(3)(iv), 416.929(c)(3)(iv). However, an ALJ is not required to discuss every piece of evidence contained in the record. *See Black*, 143 F.3d at 386; *Kozel*, 2012 WL 2951554, at *3.

Here, the court concludes that it was not necessary for the ALJ to expressly discuss the drowsiness plaintiff reported as a side effect of his medications. First, the ALJ expressly stated in his decision that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, *based on the requirements of 20 CFR 404.1529* [which includes the requirement to consider medication side effects] . . . ." Tr. 14 ¶ 5 (emphasis added). In addition, the ALJ directly questioned plaintiff about the side effects of his medications at the hearing. Tr. 42-43. It is also clear from the decision that the ALJ carefully considered, generally, plaintiff's use of medication to treat his pain. The ALJ referenced plaintiff's testimony that he used medication for both his neck and back pain (Tr. 14 ¶ 5) and, as discussed above, found that plaintiff's "condition has essentially been controlled with medication" (Tr. 15 ¶ 5).

Moreover, it is readily apparent from the record why the ALJ did not find plaintiff's allegations of drowsiness worthy of discussion. Aside from his own subjective complaints, plaintiff fails to cite to, nor does the court find, any medical evidence of these side effects. *See Lewis v. Astrue*, No. ED CV 08-01443-VBK, 2009 WL 2044661, at *2 (C.D. Cal. 8 July 2009) ("Where there is no objective evidence to support an allegation of side effects of medication, the issue need not be considered." (citing *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002))). Rather, plaintiff describes these side effects only in his Function Reports (Tr. 209, 261) and in his testimony at the hearing (Tr. 33, 37, 42-43). And, as discussed above, the ALJ found plaintiff's subjective complaints only partially credible.

More importantly, there is no evidence that these side effects resulted in any additional functional limitations.  *See Hancock v. Astrue*, No. 1:09CV87, 2012 WL 1267888, at *9 (M.D.N.C. 16 Apr. 2012) (mag. judge's rep. & recommendation) (rejecting plaintiff's argument that the ALJ was required to discuss the alleged drowsiness caused by medication where she did not cite to any evidence in the record showing "that her reported side effects interfered with her daily activities at all, let alone altered her functional capacity beyond the scope of her existing back pain"), *adopted*, 9 July 2012 Order (D.E. 34); *see also Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations."). Nonetheless, the ALJ apparently did give some weight to plaintiff's complaints of drowsiness, to the extent that it interferes with plaintiff's ability to concentrate, because he included the limitation of SRRT's in the RFC.  Tr. 14 ¶ 5.

For the foregoing reasons, the court concludes that, on this record, the ALJ was not required to discuss in his decision the drowsiness allegedly caused by plaintiff's medications, and his determination not to do so is therefore supported by substantial evidence.  The court accordingly rejects this final challenge to the ALJ's decision.

## III.  CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards.  IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings (D.E. 29) be ALLOWED, plaintiff's motion for judgment on the pleadings (D.E. 27) be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 30 December 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party, but in no event later than 13 January 2014.

This, the 13th day of December 2013.

James E. Gates
United States Magistrate Judge